Filed 12/16/13  Marriage of Sahansra CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Placer)

----

| | |
|---|---|
| In re the Marriage of KULVINDER and HARLEEN SAHANSRA. | C069686 |
| KULVINDER SINGH SAHANSRA,<br><br>Appellant,<br><br>v.<br><br>HARLEEN SODHI,<br><br>Respondent. | (Super. Ct. No. SDR30389) |

Appellant Kulvinder Singh Sahansra, an attorney proceeding in propria persona, appeals from the trial court's order and findings in an ongoing dispute over the care and custody of his two minor children following the dissolution of his marriage to respondent Dr. Harleen Sodhi.  We shall affirm the judgment.

**FACTUAL AND PROCEDURAL BACKGROUND**

Unfortunately, appellant in the present case has chosen to file a 46-page brief that fails to provide a coherent chronology of the dispute between appellant and respondent. Faced with this dearth of information, we shall briefly attempt to summarize the relevant facts.

1

Appellant and respondent married in 1999; the marriage terminated in 2008. The parties have two minor children.

The dissolution of the parties' marriage led to a veritable quagmire of litigation. Ultimately, appellant focuses on three stipulations he entered into in April 2010 and which he has continually challenged over the past two years. Appellant agreed to (1) a stipulation and order for modification of temporary parenting plan; (2) a stipulation regarding child support, daycare expenses, spousal support, and remaining issues of case; and (3) a stipulation regarding property issues and attorney fees. An amended statement on appeal sets forth the disputes in 2009 that preceded the stipulations. In 2010 the court found appellant in contempt of court for violating orders and placed appellant on probation for one year.

In 2011 appellant filed a request for an order to show cause to set aside the three stipulations. The order to show cause also sought relief on other related matters, including custody, visitation, support, and respondent's application for a move-away order. The court conducted numerous hearings and appointed counsel to represent the children.

The court addressed appellant's claims in a statement of decision filed September 7, 2011. Appellant argued he was subjected to undue influence, fraud, and oppression because during negotiations over the settlement of the case his children were being held hostage by virtue of the supervised visitation order. Appellant also argued respondent's counsel would not release a lien on appellant's property until the matter was settled to respondent's satisfaction.

The court found, pointedly, that appellant "is unable to produce evidence showing that these stipulations were the result of an undue influence that was in fact the taking of unfair advantage of another's weakness of mind. In this case, the court cannot find evidence showing that [Appellant] was the victim of threats other than what he has concocted in his own jaundiced viewpoint of his view or version of fact. The court

2

cannot find that he has been subjected to any form of physical violence or intimidation which would support a finding of oppression or overreaching. [Appellant], to his detriment, **does not establish a nexus** between alleged defalcations of Respondent or her attorney or overreaching by same and being connected to any loss of his free will."

The court found no evidence of physical intimidation or evidence that appellant is of a weak mind. The distribution of assets was not so skewed in favor of respondent as to reflect fraud or undue influence. Under the totality of the circumstances, the court could not find appellant's signing of the stipulations was anything other than what he negotiated in his own behalf. Any duress in the matter, the court concluded, was caused by appellant's own conduct "or self-inflicted behavior of litigating this matter to the point of absurdity."

Appellant also argued the stipulations were changed by respondent's counsel after he signed them. The court reviewed the evidence and rejected the claim. The court also stated: "One of the conclusions the court is forced to make in this matter is that the [Appellant] is engaging in an effort to relive and re-litigate each and every slight received during marriage and/or during this litigation whether they be real or imagined. . . . [¶] . . . [¶] Based upon the foregoing, the court makes this final observation. [Appellant's] efforts at setting aside the three Stipulations that he entered into can be best characterized as being disingenuous. The court is prepared to accept that he has, in his own mind, sufficient grounds to sign the stipulations and then to bring these motions. This case, which now exceeds nine volumes, has been punctuated by efforts of the [Appellant] to maintain control over his ex-wife by attempting to disregard the processes of the court and the processes of litigation. These efforts by [Appellant] are without support. Each one of [Appellant's] arguments, when best characterized, are convoluted and unintelligible. They are minimally understandable and when considered with the contrary evidence as supplied by Respondent and Respondent's witnesses, it is clear to the court that [Appellant's] requests must be denied. [¶] The law is not so struthious as

3

to compel a judge . . . to divorce himself or herself from common sense or to ignore what is perfectly obvious. "  The court denied appellant's request for an order to show cause to set aside the three stipulations.

The court also considered a plethora of appellant's related complaints.  The court denied appellant's motion to change venue, rejected appellant's claim of after discovered property, and denied his application to modify child support.

The court expended great time and energy examining the custody and visitation arrangements between appellant and respondent.  Clinical evaluations of both parties, conducted in 2009 by Dr. Eugene Roeder, revealed appellant as narcissistic with poor judgment as to child safety and an underappreciation of parental responsibility.  After reviewing the parties' history of litigation over custody, the court found appellant's "approach as to this litigation mirrors his personality, as reported by Dr. Roeder, as did his presentation of evidence and argument during the numerous hearings in this matter.  It was evasive, purposefully ambiguous, contumacious and full of tedious prevarications.  His approach to this litigation like his parenting of his two children is both self-centered and selective.  At no time has he expressed a willingness to either address or suppress personality traits and thus to allow him to manifest an appropriate parent-child relationship."

During appellant's testimony regarding custody, he stated he would not exercise visitation of his children because he did not like the order made and his due process rights had been violated.  Appellant also declined an opportunity to exercise a brief period of supervised visitation in order to reconnect with his children.  The court also noted examples of appellant's lack of insight, including attempts to influence his children's counsel by offering tickets to a professional baseball game.  According to the court, appellant views his children as property and/or a prize to be won in order to achieve victory over respondent.  The court expressed its concern that based upon appellant's acts of neglect, lack of appropriate parenting, and failure to recognize safety issues, these

4

behaviors will reoccur. The court also noted appellant's failure to pay child support as ordered by the court, and found factually supported evidence of domestic violence by appellant against respondent.

Finally, the court addressed respondent's request to relocate to Georgia with the children. The court noted respondent's better employment opportunities in another state were only supposition, but contrasted this with appellant's refusal to pay child support. The court determined: "The parties' relationship is one of inability or an unwillingness to communicate and cooperate and develop a co-parenting plan. Neither has so far demonstrated a willingness to place the best interest of the children above their individual interests. By way of example, mother's self interest in moving to another state certainly will damage any relationship with Father. Father's narcissistic personality promoting a refusal to participate in supervised visitation otherwise strains the parent/child relationship. Clearly, the parents are incapable of sharing any custody. Father exercising virtually no parenting and each party having failed to consistently conform to orders regarding visitation and each having failed to promote contact with both parents. [¶] Will the move-away damage the father-child relationship? It is hard to conclude that the parent-child relationship is anything more than factually terminated at this time, primarily due to father's behaviors."

The court concluded that appellant refused to visit the children if supervised, refused to pay child support, and failed to acknowledge the prerequisites of paternal parenting. Respondent was the only parent with whom the children had any kind of relationship. No evidence showed respondent's desire to relocate was made in bad faith. Therefore, "[w]ith the absence of bad faith it is the court's determination that the best interest of the children will be found [whilst] living with their mother. Therefore, mother['s] move to Georgia is approved as being in their best interest subject to the following conditions. If they are substantially met, then the move is allowed, if not, the move to Georgia is denied. Subject to the conditions, any visit in California with father

5

will remain supervised until further order of the court." The court then set forth the conditions to be met. Child support remained at $400 a month.

Appellant filed a motion to modify the court's proposed statement of decision. The court denied the motion and adopted the proposed statement of decision as the court's final decision on October 28, 2011. The judgment was filed on October 28, 2011. Appellant filed a timely notice of appeal.

## DISCUSSION

In his opening brief, appellant undertakes to provide the "back story" of respondent's counsel, who attended law school with appellant, and presents a litany of complaints regarding the conduct of various judges, attorneys, and court staff. None of these allegations are germane to the judgment from which he appeals.

Appellant's opening brief fails to take into account the most basic rules of appellate review. On appeal, a judgment of the trial court is presumed to be correct. We presume the trial court followed applicable law; the burden is on the appellant to demonstrate otherwise. (*In re D.W.* (2011) 193 Cal.App.4th 413, 417-418.) Appellate briefs must provide argument and legal authority for the positions taken. "When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority we treat the point as waived." (*Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784-785.) Assignments of error must be set forth with specificity under separate headings. (See Cal. Rules of Court, rule 8.204(a)(1)(B).) We are not compelled or even inclined to sort through the myriad claims offered by appellant in a stream of consciousness style and select those that are not separately captioned but seem worthy of comment. Nor will we undertake to fashion viable arguments from appellant's numerous comments about the rulings and conduct of various judges and the actions of multiple attorneys.

6

In a scattershot manner, appellant disputes the trial court's decision regarding property division, child support, attorney fees, child custody and visitation, and respondent's move-away request. None of these contentions has merit.

Appellant baldly asserts the property division was "inequitable" and invalid, since it was not approved by his counsel as required by the Superior Court of Placer County, Local Rules, rule 30.7. Appellant also challenges the child support and attorney fees portions of the April 2010 stipulations on the same grounds.

The trial court observed that appellant had been represented by numerous attorneys: "A review of the file clearly shows that attorneys come into and out of this case 'willy-nilly' without following the procedures of filing substitution of attorney forms." The court also noted several of appellant's counsel acted as cocounsel, and that appellant requested various attorneys to deal with him directly.

The court concluded: "Further, it is reasonable to conclude, under Rule 30.7, that when an attorney appears with co- counsel, either may sign in a stipulation. This is clearly true herein as [Appellant] has negotiated multiple issues before the April 2010 stipulations. He has collectively filed more pleadings than any other including those representing him by Ms. Stanley, Mr. Tanaka and Ms. Martinez-Senftner. His evidence and argument is at best not persuasive and at worst not candid. While the results may not be to [Appellant's] liking, he cannot now claim that the results should be overturned for a violation of this procedural rule. The request to set aside the stipulations as a violation of Placer Local Rule 30.7 is denied[.]"

Appellant fails to explain why the court erred in reaching this conclusion. Nor does appellant present a coherent argument supporting his claim that the property division reflected in the April 2010 stipulation is unfair. The trial court found the evidence disclosed otherwise: "Respondent argues that the inequality, if any, was due to her decision after months and years of contentiousness, vitriol, argument and continuing litigation to just give up and give in to [Appellant's] demands, to her loss. [Appellant]

7

has not pointed to any document, such as a propetizer schedule, that supports a claim of unequal distribution of community property. [Appellant] does not point to any financial inequality or to any item or single item on the propetizer attachment that is to his disadvantage. These arguments are not sustainable as they are based upon supposition. There is no evidentiary link between [Appellant's] perceptions and the actual facts."

Appellant presents a litany of complaints regarding child custody and visitation. However, appellant's argument unravels into a series of attacks on the court's granting of respondent's request to move to Georgia.[1] His dissatisfaction with the trial court's rulings is palpable, but appellant fails to present a coherent challenge to those rulings. Instead, appellant rehashes each procedural skirmish and reargues the same issues he presented to the trial court. Into the mix, appellant presents arguments totally unrelated to the issues in the April 2010 stipulations. Appellant fails to reveal any error on the part of the trial court.

## DISPOSITION

The judgment is affirmed.

                                    RAYE        , P. J.

We concur:


        HULL        , J.


        BUTZ        , J.

_____

[1] Appellant asserts respondent moved the children to Georgia without meeting the conditions of the move-away order of October 28, 2011, and states the confirmation of the ability to move the children was expressly denied by another court on June 12, 2012. Appellant does not provide any support for these claims, and our review of the record does not reveal any failure of respondent to meet the conditions of the order allowing the move.